DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

SCOTT D. JOINER (CABN 223313)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Scott.Joiner@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> YOLANDA BROWN, <br><br> Defendant. | NO.  CR 15-00442 EMC <br> NO.  CR 16-00441 EMC <br><br> UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE FROM CUSTODY |

U.S. OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

Defendant Yolanda Brown is currently serving a concurrent 130-month sentence for seven convictions: distributing methamphetamine, five bank robberies, and being a felon in possession of a firearm. She is located at Federal Correctional Institute, Dublin, with an anticipated release date of August 6, 2025.  She has served approximately 40% of her 10-year, 10-month sentence and now seeks a reduction in sentence and immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (CR 15-442 Dkt No. 60; CR 16-441 Dkt No. 29).  In light of the defendant's extensive criminal history – which spans three decades – and the fact that she absconded and committed five bank robberies while on pretrial supervision the last time she was facing federal charges, the government respectfully submits that her motion for early release should be denied.  Defendant Brown is a demonstrated danger to the community, and her immediate release would be inconsistent with the goals of sentencing as set forth in 18 U.S.C § 3553(a).

## BACKGROUND

After selling more than 50 grams of methamphetamine to an ATF confidential informant, the defendant was charged on September 15, 2015, in a one count Indictment (CR15-00442 TEH) with a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) - Possession With Intent to Distribute and Distribution of Methamphetamine (Count One). On October 2, 2015, she was released on an unsecured $50,000 bond with U.S. Pretrial Services. (PSR at 2.) The parties agreed to her release after securing bed space for her at New Bridge Foundation. She was remanded to custody on October 14, 2015, after being terminated from New Bridge for substance abuse and threatening violence against the staff. (CR 15-00442, ECF Nos. 15, 16, 18 and associated violation memos.)  Pretrial services eventually secured space for the defendant at another facility, and she was released to a halfway house with a second chance to pursue a treatment on November 18, 2015.  (*Id.*, ECF No. 25.)  The defendant was remanded to custody for additional violations at the halfway house on December 21, 2015. (*Id.*, ECF No. 18 (Form 8 and associated violation memorandum).).  On December 28, 2015, she was released for admission to Healthright 360. (*Id.*, ECF No. 34.) On January 5, 2016, a bench warrant issued for the defendant's arrest.  The warrant issued because the defendant arrived at Healthright 360 with what appeared to be

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

1

fraudulent credit cards, a fake ID, and a counterfeit currency, absconded, and then failed to appear at a bail hearing to address the new violations. (*Id.*, ECF No. 37.)

The defendant was arrested with a firearm more than six months later, on July 27, 2016. In the interim, she had robbed five banks – two in January, one in February, and two in June. (PSR ¶¶ 8-12.) Each robbery is described in more detail below.

- On January 11, 2016, the defendant robbed the Wells Fargo Bank located at 2055 Chestnut Street in San Francisco, California. Brown entered the bank and approached a teller. After attempting to convert currency for quarters, she said to the teller, "Give me all the money in your drawer." The teller initially did not understand her request, and Brown stated, "Do you want me to shoot you?" At that point, the teller handed Brown a pile of one-dollar bills. Brown took the money and stated, "I want all the $100s. Give it to me or I'm gonna shoot you." The teller began handing the defendant money from her top drawer. Brown again demanded, "Give me the $100s. Do you want me to shoot you in front of these people?" The teller responded, "I swear to God. I don't have any $100s. I swear." The defendant grabbed the money on the counter and placed it in a plastic bag and left. In total, she took $1,674.00 from the bank. (PSR ¶ 8.)

- On January 13, 2016, the defendant robbed the Patelco Credit Union located at 1358 Fairmont Drive in San Leandro, California. The defendant entered the credit union, approached teller station, and stated, "This is a robbery, don't touch any buttons, give me the cash from the top drawer, give me the 100s." The teller was frightened and handed over the money in her drawer to the defendant. Brown put the money into a plastic bag and left the credit union. In total, she took $11,192.00 from the credit union. (PSR ¶ 9.)

- On February 19, 2016, the defendant robbed the Patelco Credit Union located at 1358 Fairmont Drive in San Leandro, California. She had previously robbed the same location on January 13, 2016. The defendant entered the credit union, approached the teller station and stated, "This is a robbery. I need all of your money. . . I'm not fucking around. I need all your money, especially the 100s." The teller opened her drawer and began taking out

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

2

cash. Brown stated, "You're taking too fucking long, give me your hundreds." The teller handed Brown money through the teller window. Brown said, "I know you've got more money than this, Go into your second drawer . . . Watch your hands – I don't want to see you reach for that alarm." The teller handed a single bundle of cash from the second drawer. Brown became angry and said, "I need all your money – I know you have more." The teller stated there was no further money in the drawer and displayed an empty currency bag. Brown put the money she had collected into a plastic bag and left the credit union. In total, she took $1,908.00 from the credit union. (PSR ¶ 10.)

- On June 9, 2016, the defendant robbed a Citibank bank located at 2400 19th Avenue in San Francisco, California. The defendant entered the bank armed with a handgun and approached teller station 4. She tapped the handgun against the counter and stated, "Here, here." She continued tapping the handgun against the counter before pointing it through the bottom of the window at the teller and stating, "Give me everything you have." The teller began handing a stack of one-dollar bills to the defendant. Brown shouted, "Give me!" and repeatedly tapped the handgun against the window. The teller handed a thick bundle of five-dollar bills to the defendant, who shouted, "Give me more." The teller stepped back from the counter. Brown pointed the handgun directly at the teller's face before taking the money and leaving. In total, she took $511.00 from the bank. (PSR ¶ 11.)

- On June 16, 2016, the defendant robbed a Wells Fargo Bank located inside a supermarket at 3365 Deer Valley Road in Antioch, California. The defendant approached teller station Brown was carrying a handgun concealed inside a plastic bag. She pointed the firearm at the teller and said, "This is a robbery, give me twenties." When the teller appeared surprised, the defendant stated, "Get close to your cash box or I'll shoot you." The teller began removing money from the cash drawer and handed it to the defendant. Brown took the money and left the bank/supermarket. In total, she took $4,000.00 from the bank. (PSR ¶ 12.)

- In the course of the five robberies, the defendant caused a total loss of $19,285.00. (PSR ¶ 15.)

The bank robberies and firearm led to six new charges and a new case (Case No. CR 16-00441). On November 21, 2016, the defendant pled guilty pursuant to a plea agreement to all charges in both cases: Count One in Case No. CR 15-00442, possession with intent to distribute and distribution of more than 50 grams of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1); five counts of bank robbery, in violation of 18 U.S.C. § 2113(a) (Counts 1-5 in Case No. CR 16-00441); and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 6 in Case No. CR 16-00441). On February 27, Judge Thelton Henderson sentenced Brown to a concurrent sentence of 130 months.

Brown is presently 51 years old. In her motion for release, she argues that her medical history puts her at greater risk of severe illness if she were to contract COVID-19. The defendant's medical records confirm that she is diabetic. There is also no dispute that the defendant submitted a request for compassionate release that was denied by the warden. The defendant plans to live with her son in Antioch if released. The defendant's son was 15 at the time of her sentencing, and the PSR notes that Child Protective Services removed him from her custody in 2012. (PSR ¶ 115.)

## ARGUMENT

**I.    REDUCTION OF DEFENDANT'S SENTENCE IS NOT WARRANTED**

    **A.    Applicable law**

The Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court "finds that" either "extraordinary and compelling reasons warrant such a reduction," or the defendant is at least 70 years old and has served at least 30 years in prison, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *See, e.g.*, *United States v. Reid*, No. 17-cr-00175-CRB-1, Dkt. 554 (N.D. Cal. May 5, 2020); *United States v. Robinson*, No. 18-

CR-00597 RS, Dkt. 33 (N.D. Cal. Apr. 27, 2020).[1]

The pertinent policy statement is set forth at United States Sentencing Guidelines (USSG) § 1B1.13. It prohibits this Court from reducing a defendant's sentence unless the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See United States v. Cazarez*, No. 15-CR-00362-CRB-1, Dkt. 78 (N.D. Cal. May 4, 2020) (denying compassionate release claim due to danger).[2]

The Sentencing Commission also provided explicit examples of what constitutes an "extraordinary and compelling circumstance," including:

(A) **Medical Condition of the Defendant.**—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13 cmt. n.1.[3]

---

[1] Congress explicitly gave authority to the Sentencing Commission to further describe what conduct would authorize a court to order a compassionate release. Specifically, 28 U.S.C. § 994(t) states that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A), "including the criteria to be applied and a list of specific examples." The statute also states that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

[2] While district courts disagree about whether the First Step Act alters the binding nature of USSG § 1B1.13, "the limited statutory exceptions to the general rule of finality of judgment" counsels in favor of following the Sentencing Commission's guidance, as one judge of this Court recently did when faced with a similar motion. *Eberhart*, 448 F. Supp. 3d at 1090; *see also United States v. Willingham*, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (collecting cases).

[3] Application Note 1(D), the final example listed by the Sentencing Commission, is inapplicable to this situation. *See United States v. House*, No. 14-cr-00196-CRB-1, Dkt. 2202 at 4 n.2 (N.D. Cal. May 20,

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

Thus, in order to qualify for compassionate release after having exhausted his or her administrative remedies with the Bureau of Prisons, a defendant must be able to demonstrate one of the listed in the policy statement. *See United States v. Kelley*, 15-cr-00444-CRB-2, Dkt. 146 (N.D. Cal. May 27, 2020). The defendant bears the burden to show special circumstances meeting the high bar set by Congress and the Sentencing Commission for compassionate release to be granted. *See United States v. Shabudin*, No. 11-CR-00664-JSW-1, Dkt. 571 (N.D. Cal. May 12, 2020); *United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that defendant bears the burden of establishing entitlement to sentencing reduction and citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, the defendant first must establish that her condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1(A).

The existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not by itself fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. As Chief Judge Hamilton recently held in this district, "General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. §1B1.13." *Eberhart*, 448 F. Supp. 3d at 1090; *see also Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may

---

2020) (holding (D) inapplicable even in light of the COVID-19 pandemic). It provides as follows: "**Other Reasons.** — As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." USSG § 1B1.13 cmt. n.1. In turn, BOP promulgated Program Statement 5050.50, amended effective January 17, 2019, to set forth its own internal criteria for evaluating compassionate release requests. *See* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. In this case, the Director of BOP did not identify any "extraordinary and compelling reason" under this application note.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population.

But the combination of an inmate's chronic medical condition and the risk of contracting COVID-19 in a custodial setting may constitute an extraordinary and compelling reason to grant a motion under 18 U.S.C. § 3582(c)(1)(A), where COVID-19 and an inmate's medical condition would not individually suffice. If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,[4] that condition—in combination with the likelihood that a defendant may contract COVID-19 while incarcerated and suffer severe symptoms as a result—may constitute a "serious" medical condition "from which [the defendant] is not expected to recover," which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." USSG § 1B1.13 cmt. n.1(A)(ii)(I). But as part of its analysis of the totality of circumstances, the Court should also consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated. That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at his or her institution.

**B.     Defendant's Condition is Eligible for Compassionate Release Consideration**

In this case, Brown asserts that she suffers from diabetes and that her condition makes her more vulnerable to becoming seriously ill should she contract COVID-19. The government has obtained medical records from BOP that corroborate Brown's assertion that she is diabetic, which is among the conditions identified by the CDC on its website as increasing a person's risk for developing serious illness from COVID-19. Given the current pandemic and the likelihood that if Brown contracted COVID-19, she would potentially suffer severe symptoms due to her personal health characteristics, the

---

[4] *See* Centers for Disease Control, *At Risk for Severe Illness*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last modified July 17, 2020).

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

7

government does not contest that Brown presents an extraordinary and compelling reason, as required under USSG § 1B1.13 cmt. n.1(A).

### C. The Court May Not Modify Defendant's Sentence Because She is a Danger to Others

The Court may not reduce Brown's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). *See Cazarez*, No. 15-CR-00362-CRB-1, Dkt. 78 (denying compassionate release claim due to danger). This record precludes such a finding.

Brown's argument is that given her age, health, and good conduct in prison, the Court should conclude she no longer presents a danger or that any potential danger is outweighed by the risk she will contract COVID-19. But many defendants do well in prison only to revert to crime upon their release, and many older defendants have years of good conduct in prison but may remain dangerous to the community. The standard for compassionate release is not just whether someone is older and has performed well in prison. *See* USSG § 1B1.13 app. note 3 ("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."). Brown must also show that she will not be a danger if released. Defendant Brown cannot do so here. *See United Sates v. Cazares*, No. 18-cr-00466-BLF-1, Dkt. 351 (N.D. Cal. Apr. 23, 2020) (concluding, in the pre-trial detention context, that "the balancing of the factors does not warrant [defendant's] release [because he] continues to pose a serious risk to the safety of the community, and that risk overrides [defendant's] concerns that he might contract COVID-19 at [local jail]."). Recognizing that there is a significant difference between doing well in prison and doing well in society, this Court must look to the factors set forth in 18 U.S.C. § 3142(g).

Under § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY
8

person's release. 18 U.S.C. § 3142(g)(1)–(4). Consideration of these factors – which are not affected by COVID-19 – does not allow this Court to conclude that Brown is not a danger to the safety of any other person or the community.

The defendant's criminal history spans nearly three decades. Her criminal history is remarkable not only for its longevity, but also for the frequency and regularity of arrests and convictions. This is not the defendant's first conviction for an offense involving a loaded firearm. Nor is it her first conviction for narcotics trafficking. But until her most recent federal convictions, her crimes had never included anything approaching armed bank robbery. (*See* PSR ¶¶ 78-90, 94-106.) At the time of her guilty pleas, the defendant's criminal conduct was escalating dangerously. In the 27 years spanning 1988 to 2015, the defendant accumulated 13 convictions (seven felonies and six misdemeanors - excluding the current charges), as well as at least 17 arrests. (*Id.*) The frequency and continuous nature of the defendant's felonious conduct and arrest record are even more remarkable when compared against numerous periods of incarceration and judicial supervision during the same time.

Her conduct over the last several years preceding her convictions underscores the rising danger she posed, and continues to pose, to the community. Perhaps most concerning, however, is the violent escalation in the defendant's criminal conduct after she absconded from pretrial supervision in her original federal case. While on pretrial release in 2015, she was given the opportunity to pursue drug treatment on two separate occasions. She was terminated from both treatment programs, however, for misconduct (on one occasion for threatening a staff member at New Bridge with violence). Rather than surrender and face the Court after her second termination, however, the defendant chose instead to become a fugitive. While evading law enforcement for more than six months, she committed a string of five bank robberies – threatening her victims with violence and/or death each time. Not surprisingly, when the defendant was finally apprehended, the police found her in possession of a loaded firearm.

The COVID-19 pandemic does not reduce Brown's danger to others. The danger posed to the community by firearms, bank robbers and drug offenses has been well established. And although the defendant notes that much of her criminal conduct has been driven by drug addiction, this factor makes her more dangerous, not less. *See United States v. Makela*, 2020 WL 3892865 (N.D. Cal. July 10, 2020)

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY
9

(50-year-old at Terminal Island has asthma and COPD, and has tested positive; but he has served only 14 months on 97-month sentence for 19 bank robberies and attempted robberies, after serving a lengthy sentence for earlier robberies, and he suffers from drug addiction making him a further danger to the community); *United States v. Carr*, 2020 WL 4192560, at *2 (D.D.C. July 21, 2020) (defendant has served 199 months of 262-month sentence for five bank robberies; denied because the full sentence remains appropriate in light of a long history of bank robberies and infractions in prison); *United States v. Soto*, 2020 WL 3316003 (D. Colo. June 18, 2020) (defendant with series of robbery convictions remains a threat at age 74; his most recent offense was at age 70, when his health was similar, and he also has incurred disciplinary infractions).[5]

The defendant remains a danger to the community and her motion should be denied accordingly.

### D.     The Section 3553(a) Factors Weigh Heavily Against Release

Finally, any compassionate-release decision—even for a statutorily eligible defendant—must also consider the factors under 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Shayota*, No. 15-CR-00264-LHK-1, Dkt. 780 (N.D. Cal. May 26, 2020) (denying compassionate release for defendant who served less than 6% of his custodial sentence based on analysis of Section 3553(a) factors); *United States v. Furaha*, No. 09-CR-00742-JST-1, Dkt. 36 (N.D. Cal. May 8, 2020) (denying compassionate release for defendant who served roughly 20% of his sentence based on analysis of Section 3553(a) factors).  The Third Circuit has specifically held that length of time remaining on a defendant's sentence is an appropriate consideration for determining whether to reduce a sentence under 18 U.S.C. § 3582(c)(1)(A).  *United States v. Pawlowski*, 967 F.3d 327, 330–31 (3d Cir. 2020); *see also United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020) (holding the district

---

[5] *See also United States v. Daychild*, 357 F.3d 1082, 1100 (9th Cir. 2004) (approving detention on danger prong due to defendant's possession of firearms and stating that "danger posed to the public by armed conspirators who traffic in illicit drugs is too plain to permit dispute."); *see also United States v. Torres*, 911 F.3d 1253, 1264 (9th Cir. 2019) (Congress passed Section 922(g) to "disarm groups whose members Congress believes are unable or unwilling to conduct themselves in conformity with the responsibilities of citizenship" (internal quotation marks omitted)); *United States v. Zaragoza*, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008) (Spero, J.) ("In assessing danger, physical violence is not the only form of danger contemplated by the statute.  Danger to the community can be in the form of continued narcotics activity or even encompass pecuniary or economic harm.").

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

10

1  court did not abuse its discretion in holding the § 3553(a) factors did not warrant release where
2  defendant had served less than half his sentence, even though the defendant's medical condition
3  qualified as an extraordinary and compelling circumstance).

4       Those factors – which Judge Henderson already considered when imposing defendant's
5  sentence – do not support her request for premature, permanent release.  The law, and the specific facts
6  of the defendant's case, neither demand nor endorse that result. This is especially true given the
7  defendant's complete disregard of federal judicial supervision and commission of six new felony
8  offenses while pending her original federal charge. In addition, the defendant has served less than half of
9  her sentence (approximately 40%). Granting Brown's motion under 18 U.S.C. § 3582(c)(1)(A) would
10 undermine these factors, resulting in an effective sentence far below the applicable Guideline range and
11 well below the mandatory minimum sentence.

12      As a result, releasing the defendant now would not appropriately re-balance the § 3553(a) factors
13 of this case, particularly given that the present conditions caused by the pandemic are likely
14 impermanent—public reporting indicates that various medical professionals globally are in the process
15 of developing a vaccine and researching other methods of combatting the disease in the coming months.
16 *See, e.g.*, https://www.nih.gov/news-events/news-releases/nih-clinical-trial-investigational-vaccine-
17 covid-19-begins.

18      Finally, Brown has not indicated whether she would return to a stable housing situation, would
19 have adequate employment, or access to food or healthcare. It also seems highly unlikely that the young
20 son she has been separated from since 2012 (and who was still a minor when she was originally
21 sentenced) will have any deterrent effect on the defendant's persistent criminal conduct if she resides
22 with him under home confinement.

23 **II.   IF THE COURT MODIFIES DEFENDANT'S SENTENCE, IT SHOULD DO SO WITH
24       APPROPRIATELY RESTRICTIVE CONDITIONS**

25      If the Court is inclined to grant Brown's motion for compassionate release, it should reduce
26 Brown's sentence to time served but substitute a term of probation or supervised release with a condition
27 of home confinement for the duration of Brown's current sentence of imprisonment August 6, 2025, to
28

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM
CUSTODY
11

be followed by the term of supervised release with conditions as ordered by the Court at Brown's original sentencing hearing.  The Sixth Circuit recently noted that, while § 3582(c)(1)(A) does not authorize district courts to order defendants to serve their current sentences on home confinement, "if the district court reduces a defendant's sentence under § 3582(c)(1)(A) to time served, it can impose a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home." *United States v. Spencer*, __ F. App'x __, No. 20-3721, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020) (citing 18 U.S.C. § 3853(d); USSG § 5F1.2). "Thus, with a few extra steps, a district court can craft a reduced sentence that, for all practical purposes, looks very much like ordering that the defendant be allowed to spend the remainder of his current sentence on home confinement." *Id.* (internal quotation omitted).  But the appellate court cautioned that a district court may do so "only if it finds that the defendant meets the criteria set forth in § 3582(c)(1)(A) and USSG § 1B1.13." *Id.*

## CONCLUSION

For the foregoing reasons, the defendant's motion should be denied.  If the Court is inclined to grant release, it should not order any release before travel plans and logistics are in place and should also allow 14 days for BOP to conduct an appropriate quarantine before release.

DATED:  October 1, 2020　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　DAVID L. ANDERSON
　　　　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　SCOTT D. JOIMER
　　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY